Thank you, Your Honor. Good morning. Mark Vander Ottenby, along with Stacey Tolchin from our office, on behalf of Mr. Saravia, who is present in court today with his mother and daughter. Mr. Saravia has been a permanent resident of the United States since the age of one. He has twice gone to prison for aggravated felony convictions. The issue in this case is whether he has served more than five years for those aggravated felony convictions so as to bar him from even applying for discretionary relief before the immigration judge. There are two separate ways in which we believe the Court could find that the immigration judge, whose decision is being reviewed here, erred in finding that Mr. Saravia served more than five years for the aggravated felony convictions. First, as to his 1992 convictions, that under the en banc decision in Corona Sanchez, Roots, which followed that, Roots-Rashgraf and Judge Rawlinson's recent decision in United States v. Rodriguez, that the immigration judge erred in counting, as part of the time served for the aggravated felony convictions, the three years that he was sentenced for. Counsel, without that enhancement, how much time was served on the 1992 conviction? Actually, it was 16.4 months. We had 18.3 in our piece, and we apologize for the math error, but either way. How can that be? What was he sentenced to for the 1992 conviction? He was, for the 1992 conviction. Without the enhancement. Without the enhancement, what was his sentence? Well, it was two years and eight months for the aggravated felonies. Without the enhancement. Correct. Okay. So why are you saying 16 months? Because he only served 39 months total for the combined almost six years of sentence, so you have to prorate that. In other words, he got two years and eight months for aggravated felony convictions, eight months for a simple possession, three years for the enhancement. And so when you do the math percentage-wise, it was 42% of the time is the way it works, and we've put that forward in our piece. We actually have 47%, but it doesn't make a material difference. But the time he served would have been approximately half of the time. And there's no dispute about that between the parties as to how much time would be counted if the court does agree that Corona Sanchez controls this case. The second issue is, which we do not believe the court needs to reach if it agrees with us on the first, is that the 1988 conviction cannot be counted because he sustained that conviction before there was even a bar in place at all to any 212C relief. But I'd like to start with the 1992 convictions, because we do believe that Corona Sanchez controls the outcome of this case, and the court need not address what was admittedly the more difficult issue of whether Fernandez-Vargas requires this court, the Supreme Court's decision if Fernandez-Vargas requires the court to reconsider Armendariz. And it looks like Judge Walensky, both of you have a question. Go ahead. Well, what bothers me about the Corona Sanchez argument, so maybe you could address my concern. Sure. And I understand the rule that says where you have an offense that isn't punishable, the offense itself isn't punishable by a year of imprisonment, that let's say some sort of petty theft offense, but where someone's in prison for longer because of recidivism, you don't count that extra time to say that the offense is an aggravated felony. But if you have an offense that in every case is an aggravated felony by its sentence, apart from recidivism, and then recidivism time gets tacked onto that, it seems to me those are really separate analytically. They may be somewhat, but I think not significant for this case, and I think the court's subsequent decisions both in Roos v. Ashcroft and in United States v. Rodriguez applying Corona Sanchez explain that, and I'd like to explain if I could. In Roos, the issue wasn't whether or not it was an aggravated felony conviction. The issue was whether or not the court was barred from taking review of the case, and the issue was whether or not the admitted moral turpitude conviction had a possible sentence of a year or more. The government argued that it did have a possible sentence of a year or more because you would add on the maximum under 484, which was six months. You'd add on under Penal Code 666 the enhancement time, and therefore the moral turpitude offense, the government argued in that case, would have a possible sentence of over a year. In fact, he got two years in that case. What the court ruled is that, what this court ruled is he got six months, the maximum on the 484, and a year and a half under Penal Code 666 for the recidivism. But the court said that doesn't make the moral turpitude offense have a possible sentence of more than a year. The only possible sentence for the moral turpitude offense was six, six months. And that's the same as we have here. Similarly, in the recent decision I mentioned in Rodriguez, the issue was whether or not the prior convictions in that case had a possible maximum sentence of ten years. If they did, then under the statute, there was going to be a 15-year mandatory minimum imposed in the case Judge Rollins ruled on. And what the court looked at was, what was the possible sentence for those drug offenses? Was it the five years that had the max, or was it ten years? Because you could have five years for the drug offense, and you could have another five years tacked on for having a prior. So the question was, was there a possible ten-year sentence in that case? So, counsel, if we were doing that in the context of trying to define whether or not there were three prior convictions for drug felon, we were not doing that in the context of arriving at the sentence that was served. Those are two different questions. Correct, Your Honor. You weren't doing it as to what the sentence served was, but you were doing it both in Ruse and in Rodriguez as to what the possible sentence was. That was the sole issue, not whether it was an aggravated felony. The issue was whether or not there were three prior convictions for a violent felony or a serious drug offense. Serious drug offense. So the question was not how much time was served. That was a method of determining the category of the offense, which is a different question than the question of how much time was served. Well, the inquiry which the Court, Your Honor, went into in that decision was, okay, when we look at whether it was a serious drug offense, a serious drug offense is defined as a drug offense with a possible sentence of ten years. So the sole inquiry was, was there a possible sentence of ten years for that drug offense? And this Court said no. The possible sentence was a maximum of five years. It was a means to an end. The end was determining whether or not the petitioner or the defendant qualified for career criminal treatment. Well, that's correct, Your Honor. There was a different context. But the analysis was, and this Court said, Corona Science has completely foreclosed the government's argument here. In that case. It was, but, Your Honor, I would submit that there's not a material difference here as to the analysis. Because the analysis here is, what was the sentence in this case for the aggravated felony? And it's clear. If you look at AR, Administrative Record 249, I believe, which is the, which is the abstract of judgment, it says the sentences, there's two aggravated felony convictions. One, there was an eight-month sentence. One, there was a two-year sentence. Then he got added on to that eight months for the possession, which is not an aggravated felony, and three years under 11370.2. He got added on to it. Added on. Under 11370.2, he got a sentence under 11370.2. But that's the same as getting a sentence under Penal Code 666 that the Court addressed in Euless v. Roos. Because the issue in Roos was, what is the situation here? What was the possible sentence he could get? And in this case, there's no question that he was convicted of an aggravated felony. Admitted. And if you say that the recidivist part of the sentence he got was not a sentence for the aggravated felony, what was the sentence for? It was a sentence. What offense? It was a sentence, separate offense, as this Court has said. You analyze what is the sentence under the recidivist. Is there a separate offense? California Safety Code 11370.2, correct. You're saying that's a separate offense? Yes. Just as this Court said in Corona Sanchez v. Roos that the sentence received under Penal Code 666 was a separate offense, and this Court said in Rodriguez that the extra five years for the enhancement in Washington was separate and has to be separated out. And that's the law of this circuit. And the reason is that, as Court has said, the reason the person gets a recidivism enhancement is because they committed a prior offense. It was a prior petty theft in Roos and Corona Sanchez. It was a prior drug offense in Rodriguez. And that's what the penalty is for, for having a prior.  It's an enhancement because of the prior. But is it still part of the sentence for the current felony? And it's not, Your Honor. The reason it's not is because this Court has said that you cannot make the two coterminous. In Rodriguez, this Court said if you accepted the government's argument, you'd be making the two coterminous, and you can't do that under Corona Sanchez. Okay. So you're relying on the earlier Roos case? Roos, Corona Sanchez, and Rodriguez. Those are the three main cases which we believe are right on point. And the reason that I know what you were asking, which is whether or not on the under Corona Sanchez they're arguing that it was not an aggravated felony. Here you can see the aggravated felony. But I do urge the Court to look at the rationale of both Rodriguez and of Roos, because I think they are right on point. We'll look carefully at all of them. So go ahead. Okay. So let me briefly on the retroactivity issue, because I don't believe the Court needs to reach that, but I do want to address it if you disagree with me on the 1992 offenses. And admittedly, we have Armandiris here, and how do we deal with Armandiris? There's two ways that Armandiris can be addressed, and we believe should be. One is that it's distinguishable on the facts, because Armandiris was dealing with a post-1990 conviction when the bar to 212C was already in effect. This deals with a pre-1990 conviction where there was no bar whatsoever to 212C. The Court addressed in the last argument Somaniego. TOIA has specifically overruled Somaniego as to the issues in this case, and I don't believe there's a dispute as to that part. Somaniego held that you can't have – there's no retroactive effect when you have a police situation for a pre-1990 conviction, and TOIA rejected that. So Somaniego is out, but we have Armandiris. Armandiris said there's not retroactive effect for a jury trial when you go to jury trial and you don't do a guilty plea, and they did that post-St. Cyr. I've already stated the one basis for distinguishing Armandiris, which is that this is a different analysis and requires a new analysis on the retroactive effect because we're dealing with a situation where the person, Mr. Saravia, made the decision to go to trial when there was absolutely no way he'd be barred from 212C relief at the time he made that decision to take his risk in going to trial. That is different than the situation in Armandiris. I would also refer the Court to the Supreme Court's recent decision in Fernandez-Vargas. In Fernandez-Vargas, the Supreme Court made clear that reliance is not a necessary prerequisite to have retroactive effect. There, the Court said there was definitely no reliance. There was an individual who entered illegally after a prior deportation. The issue was whether they could reinstate it or not. And the Supreme Court made clear, based on its prior holdings in Landgraf and Hughes, that reliance is not required, and if there's a completed act that you cannot undo, that is sufficient. What the Supreme Court did say, however, was that there was no completed act there in Fernandez-Vargas because he continued to remain unlawfully past the time that the statute changed. So his illegal entry wasn't the completed act. But as to requiring reliance, the Supreme Court reiterated that no reliance is required. And we think, based on that, Armadares does need to be reconsidered. I'd like to save my remaining five minutes for it. Certainly may. Thank you. That will give you the opportunity to address the arguments. Thank you very much. And now we'll hear from the appellee. So the appellee, Mr. Edward Olson. Welcome, Mr. Olson. Good morning, Your Honor. This is the Court Edward Olson from the U.S. Attorney's Office in San Francisco on behalf of the Respondent. This Court should deny the petition for review. And I'll address the two arguments that the Petitioner is making in reverse order. I think the argument that IMAC, which is the version of 212C relief that the parties agree applies in this case, the argument that it would be impermissibly retroactive to apply that version of 212C relief to the 1988 convictions, that argument is foreclosed by Ninth Circuit law. That's Armadares-Montoya. In that case, the Court held that an alien who goes to trial, as opposed to an alien who pleads guilty, cannot claim that the law is being applied to him retroactively, impermissibly retroactively, because he can't show the same sort of quid pro quo  The Ninth Circuit's decision, Armadares-Montoya, was affirmed in 2006 in an opinion authored by Judge Hawkins, Kevala, sorry, Kevala v. Gonzales. And I can provide you with a cite. That's not cited in my brief, and I apologize, Your Honor. I did not discover this decision until this morning, and I'll provide the Court with a copy. It essentially just reaffirms the holding in Armadares-Montoya that an alien who proceeds to trial, as opposed to an alien who pleads guilty, does not have the same sort of subtle expectations on the availability of 212C relief as someone who accepts a guilty plea. The citation is 434, Red 3rd, 1120. And I think, although in the opening brief, the argument was Mr. Earls, can I just suggest on the citation that there's a form that you can give to the Court clerk with a copy, and we'll all have it. Okay. I will do that. Thank you. In the opening brief, the argument was made that Armadares-Montoya was decided incorrectly, but as this Court understands, another panel cannot overrule that decision unless it's an en banc court and unless there's been an intervening change in the law, which there has not been. In the reply brief, the argument is that Armadares-Montoya is inapplicable. But I'm not sure how far that helps the petitioner's argument, because I think the point of that argument is that Armadares-Montoya is inapplicable. He's not guilty of any crimes. 212C relief was available to aliens, despite previous drug convictions. But that doesn't help his argument, because he can't demonstrate under St. Cyr and under Armadares-Montoya that he had settled expectations and made decisions based on the availability of 212C relief in connection with his criminal trial, because he didn't even know that at some future point, 212C relief would be limited and that aggravated felons who had served five years or more would not be eligible. So I'm not sure how that helps his argument. Moving on to the second argument, that the sentence enhancement imposed in connection with his 1992 convictions cannot be used for purposes of calculating whether or not the aliens had served five years or more, it's undisputed that all of the convictions that are at issue in this case were aggravated felony convictions. So it's a completely different approach than that which was taken in Corona-Sanchez and Ruse and Judge Wallinson's more recent opinion. There the question was, in Corona-Sanchez, for example, whether the aliens' prior conviction for petty theft qualified as an aggravated felony for Federal sentencing purposes. Specifically, whether the crime was one for which a sentence of one year may be imposed. And the Court was bound to apply the categorical approach, which was set forth by the Supreme Court in Taylor, and said that when applying the categorical approach, you can only look at the crime for which the sentence is imposed and you can't look at recidivism statutes. But that's not the approach that's required in this case. There's no case which holds that in calculating whether or not an alien who's been convicted of multiple aggravated felony offenses has served five years or more. There's no case which holds that this Court is obligated to follow the categorical approach. And it also wouldn't make much sense to do so, because in this case, it's undisputed he was convicted of multiple aggravated felony convictions. And the issue is, well, how much time did he serve? Not the sentence imposed, but how much did he serve? And as Judge Gould pointed out, you can't look at this recidivism sentence in isolation. If the recidivism sentence, the three-year sentence enhancement, wasn't served in connection with the aggravated felony offenses, what was it served for? You can't look at it in a vacuum. And finally, I think there's a rational policy explanation for the difference between applying the categorical approach in Corona Sanchez and the kind of approach the Court should use in this case. In Corona Sanchez, the question was whether or not the alien had been convicted of an aggravated felony. That had serious, significant consequences for the alien in terms of the sentence he would be subjected to. Here, and I think the concern, as pointed out in Corona Sanchez, is that you don't want to subject somebody to the penalties associated with being an aggravated felon unless they're serious crimes. And so you look at the crime itself, not whether or not the alien had been convicted of minor crimes, but then when you add up sentence enhancements, the person reaches the level that he's an aggravated felon. Here, we don't have that concern. It's undisputed he's an aggravated felon. And if the Court has any more questions, I'd be happy to answer them. Counsel, do you agree with opposing counsel's characterization of the percentage of time that was spent pursuant to the enhancement and the amount of time that was spent pursuant to the felony? Well, as an initial matter, I will point out that the argument that the Petitioner is making about prorating the amount of time he spent in prison pursuant to the drug offenses and the time he spent pursuant to the sentence enhancement, that was not an issue that was decided by the BIA. How would we know? He's just doing it based on kind of a ratio between the two sentences. Right. And I didn't see any support in California criminal law to support that. You know, another interpretation would be that, and admittedly, the government hasn't helped the Court much on this question either, but another interpretation would be the alien serves first the time in connection with the drug offenses and then the time for enhancement. And if you interpret it that way, he still has enough time. You know, one potential remedy, of course, the government's primary argument is that regardless of how the math adds up, time served in connection with the sentence enhancement is time served for an aggravated felony, so you don't have to reach that argument. If the Court, for whatever reason, disagrees with the government, conceivably you could remand to the BIA for consideration on that question about whether prorating the amount of time is appropriate or not. I would ask, I understand pretty firmly in my mind right now the factual distinction with Corona Sanchez, but could you explain how you distinguish the Ruse case and Judge Rawlinson's opinion? I'll try to do that, Your Honor. The question in Ruse was whether the alien had been convicted of a crime for which a sentence of one year or longer may be imposed. So it's the same inquiry, although it's not whether or not the alien was convicted of an aggravated felony. It's the same question, essentially, and Ruse simply applied Corona Sanchez. And that question was whether the crime, whether a sentence of one year can be imposed for that crime.  That was a petty theft. It was a poor, petty theft, and the Court said, well, in applying the categorical approach, you look at the sentence that can be imposed for the crime itself, and we can't look at recidivism sentences. So I think the approach is almost identical. But here the question isn't the sentence that can be imposed for the crime. It's the amount of time that was served for the crime. And I think those are analytically distinct. And to say that the three-year sentence that was imposed for committing multiple aggravated felony convictions wasn't time served for those aggravated felony convictions defies common sense. This is somebody who committed aggravated felony offenses. That's not disputed. So we don't have the question of whether or not it's an aggravated felony or in Ruse whether it's a crime for which a certain sentence can be imposed. Okay. How about Judge Rawlinson's opinion? I think it's the same approach in Judge Rawlinson's opinion, as Judge Rawlinson obviously knows. The same categorical approach was applied in determining whether or not this was a crime for which a sentence of 5 years or 10 years can be imposed. So, again, it's whether or not a certain sentence can be imposed for the crime. And under Taylor's categorical approach, the Court can only look at the crime, not recidivism statutes. So, again, I think all three of those cases jive with one another. But they don't have any application to this case. Okay. Well, thank you. Unless Judge Covello or Judge Rawlinson have more. I don't think we have further questions, Mr. Olson. Thank you. Thank you. And we'll welcome Mr. Vanderhaut back to make his rebuttal argument. Thank you. Let me address Ruse, because I think we look carefully at Ruse. It really is the same inquiry. The issue in Ruse wasn't whether or not the conviction was a crime involving moral turpitude. As a matter of fact, the Court says Ruse concedes that his burglary and shoplifting convictions were moral turpitude crimes. The entire issue which the Court decided was we must decide whether Ruse's convictions carry a potential sentence. And I would submit, Your Honors, that the analysis is the same here. The issue in Ruse and Rodriguez was what is the possible sentence for the offense, not what the offense was. What is the possible sentence there? And in Ruse, this Court said that the possible sentence for the moral turpitude offense was six months, not the two years. Counsel, at page 1183, Judge Pergerson phrased the issue as we must decide whether a conviction for petty theft with a prior conviction is a crime for which a sentence of one year or longer. So he talked about whether or not the conviction for petty theft was a crime for which a sentence of one year. So it wasn't just in terms of the sentence served. It was categorizing the crime. Correct. But the government argued that the petty theft was, in that case, a crime for which more than a year could be sentenced because they argue you have to apply Penal Code 666 to that and then add those two together. And that's what the government is arguing here. The government is arguing here that what he got for his aggravated felony convictions was the 2.8 years on the two aggravated felony convictions total plus the three years. And that can't be because what did occur in this case is he got two years on one And we submit that that's the same analysis as what the individuals in Corona-Sanchez and, excuse me, and Ruse got or could have gotten under Penal Code 666 and what, in Rodriguez, the Washington State allowed for the recidivism statute there. And I think what's really important to remember is that in 1990, the law said an individual is barred if they have aggravated felony convictions and they have a five-year term of imprisonment. They didn't link the two. In 1991, Congress amended the statute and said that you have to have the five-year sentence for the aggravated felony convictions. That makes all the difference in the rule. So if we admit that if Congress had not changed the law in 1991, he had his aggravated felony convictions and he had a five-year sentence. He would have served more than five years. When Congress amended the law and said that the time served has to be for such aggravated felony convictions, there's only two aggravated felony convictions here. He got two years on one. He got eight months on the other. The three years was not for that aggravated felony conviction. And we do believe, and I know I'm having difficulty convincing you on this, but I do believe that Corona-Sanchez, the en banc decision, controls that, and the Court's prior decision in Bruce and Corona's end, excuse me, and Rodriguez are right on point. And I'll submit with that. Thank you, Mr. Vanderhoff. It's an interesting, challenging issue for us. I appreciate it. Okay. So, Sarabia Pagoda will be submitted. We thank both counsel for their excellent arguments. The Court will now take a recess of 10 to 15 minutes, after which we'll hear argument in our.
judges: Gould, Rawlinson, Covello